ROLAND L. BELSOME, Judge.
 

 | Defendant-Appellant Richard Jenkins appeals his convictions and sentences for Aggravated Battery and Attempted Aggravated Assault upon a Police Officer with a Firearm. For the reasons that follow, we affirm.
 

 FACTS
 

 On September 6, 2008, Sheila Jenkins and Deadric Freeman, Jr., were at home when Sheila’s brother, Ronnie Jenkins, entered the home and a physical altercation ensued between Ronnie and Sheila. Dead-ric testified that he overheard the altercation, entered the room and struck a blow to Ronnie, knocking out one of his teeth. Although Anthony Jenkins, Sheila’s older brother, separated the two and diffused the situation, Ronnie returned to the house shortly thereafter with his brother, Defendant Richard Jenkins. Both Defendant and Ronnie Jenkins became engaged in an altercation with Deadric, and Sheila called the police.
 

 Before the police arrived at the home, Defendant left the scene, but returned as the police were interviewing Sheila and
 
 *175
 
 Deadric.
 
 [1]
 
 Upon seeing Defendant, the officers directed Defendant to come towards them, but he fled, leaping over a chain link fence. Officers Quincy Jones and Joshua Hunt pursued Defendant on foot, |2and Officer Jonathan Rivet joined the pursuit in his police cruiser. Both Officer Jones and Officer Rivet testified that Defendant held his waistband as he ran.
 
 [2]
 

 Officer Rivet caught up to Defendant between Lamarque and Socrates Streets and observed Defendant jumping onto the roof of a shed attached to an abandoned house. As Officer Rivet exited his vehicle, Defendant was attempting to enter through a window feet first, and the officer said, “Let me see your hands! Stop!” After Defendant initially complied, holding up his hands, Officer Rivet approached him and asked Defendant to continue showing his hands. Defendant then “went down, came back out” with a semi-automatic handgun, at which time Officer Rivet drew his gun and fired a single shot, immediately seeking cover.
 
 [3]
 
 Realizing that Defendant might attempt to exit through the opposite side of the abandoned house, Officer Rivet continued proceeding toward the house. As Officer Rivet approached the house, Defendant exited and continued to flee, running past a police car and jumping over fences.
 

 Deadric testified that several hours later, he was sitting on the front steps of his home, talking to Anthony and his friends, Larry, Paul and Joseph. Suddenly, Dead-ric felt a blow to the left side of his face from an unseen assailant. He realized that Defendant had approached him from behind and struck him in the face with a gun. Deadric further testified that, after seeing Defendant with the gun, the clip of the gun fell out onto his front steps when Defendant delivered the blow |ato his face. Anthony then grabbed Defendant and told Deadric to bring the dog inside. Anthony, Joseph and Defendant subsequently walked to the corner and talked. Because Defendant discovered that the clip had fallen out of his gun when he struck Dead-ric, he returned to Deadric’s house to search for his clip.
 
 [4]
 
 After going back inside the house, Deadric sought Sheila’s assistance in being transported to the hospital so that his facial wound could be treated. Deadric showed the scar on his face to the jury.
 

 Defendant testified on his own behalf at trial. Defendant admitted to punching Deadric in the face at his home, but denied having a gun on September 6, 2008. Defendant also admitted to fleeing from the police, and expressed remorse for fleeing and for punching Deadric in the face and injuring him. Defendant further testified
 
 *176
 
 that he initially ran from the police because he knew he had done something wrong when he punched Deadric the first time.
 
 [5]
 

 PROCEDURAL HISTORY
 
 [6]
 

 On November 10, 2008, Defendant Richard Jenkins was charged by bill of information with one count of Aggravated Assault Upon a Police Officer With a Firearm, a felony in violation of La. R.S. 14:37.2 (Count 1) and one count of Aggravated Battery, a felony in violation of La. R.S. 14:34 (Count 2).
 

 On April 9, 2009, a six-person jury found Defendant guilty of the lesser and included offense of Attempted Aggravated Assault upon a Police Officer with a | ^Firearm, and also found Defendant guilty of Aggravated Battery. On May 21, 2009, the trial court sentenced Defendant to five years at hard labor for Count 1, and five years and a day at hard labor for Count 2, with credit for time served. The court ordered the sentences to be served consecutively. This appeal followed.
 

 ERRORS PATENT
 

 A review of the record reveals no errors patent.
 

 DISCUSSION
 

 Defendant assigns as error that his trial counsel was ineffective for failing to file a motion to reconsider sentence. The failure to file this motion, Defendant argues, resulted in prejudice to him because his two five-year consecutive sentences were excessive.
 

 To establish an ineffective assistance of counsel claim, a defendant must demonstrate that 1) counsel’s performance was deficient and 2) that this deficiency prejudiced the defendant.
 
 Strickland, v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel’s performance is considered ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment.
 
 Strickland,
 
 466 U.S. at 686, 104 S.Ct. at 2064. Likewise, counsel’s deficient performance will have prejudiced the defendant if the errors were so serious as to deprive the defendant of a fair trial.
 
 Id.
 
 To carry this burden, a defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Strickland,
 
 466 U.S. at 693, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 Id.
 
 This Court has recognized that a defendant must make both showings to establish that counsel was so ineffective as |sto require reversal.
 
 State v. Sparrow,
 
 612 So.2d 191, 199 (La.App. 4th Cir.1992).
 

 With regard to Defendant’s claim that his sentences were excessive, it is well-settled that the failure to file a motion to reconsider sentence prohibits appellate review of a sentence.
 
 State v. Rodriguez,
 
 2000-0519, p. 9 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 647. Accordingly, in order to determine whether an ineffective assistance of counsel claim for failure to timely file a motion to reconsider sentence claim has merit, this Court must first determine
 
 *177
 
 whether the sentence is excessive.
 
 Rodriguez,
 
 2000-0519 at p. 10, 781 So.2d at 647;
 
 State v. Batiste,
 
 2006-0875, p. 17 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 819. If the sentence is not excessive, there is no prejudice.
 
 Batiste,
 
 2006-0875, p. 17, 947 So.2d at 819.
 

 In
 
 State v. Smith,
 
 the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentence:
 

 Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o
 
 law
 
 shall subject any person to •••
 
 excessive — ‘punishment”
 
 (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Cann,
 
 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 
 State v. Walker,
 
 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462;
 
 cf. State v. Phillips,
 
 02-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
 

 State v. Smith,
 
 2001-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4.
 
 See also State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Baxley,
 
 94-2982 (La.5/22/95), 656 So.2d 973;
 
 State v. Batiste,
 
 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810;
 
 State v. Landry,
 
 03-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235.
 

 In
 
 State v. Batiste,
 
 this Court further explained that a reviewing court may not set aside a sentence for excessiveness if the record evidences a factual basis for the imposed sentence, even if there has not been full compliance with La.C.Cr.P. art. 894.1:
 

 An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed.
 
 State v. Landry, supra; State v. Trepagnier,
 
 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in
 
 State v. Major,
 
 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813: The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
 

 If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.”
 
 State v. Landry,
 
 2003-1671 at p. 8, 871 So.2d at 1239. See also
 
 State v. Bonicard,
 
 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
 

 
 *178
 

 Batiste,
 
 06-0875, p. 18, 947 So.2d at 820;
 
 see also State v. Martin,
 
 2007-0791 (La.App. 4 Cir. 10/17/07), 970 So.2d 9.
 

 |7In this case, Defendant was sentenced to five years for each of the two counts of his conviction. With respect to the first count, Attempted Aggravated Assault upon a Police Officer with a Firearm, Defendant was sentenced to the maximum penalty. La. R.S. 14:37.2
 
 [7]
 
 provides a sentencing range of one to ten years. Pursuant to La. R.S. 14:27(D)(3),
 
 [8]
 
 the maximum sentence exposure for Attempted Aggravated Assault upon a Police Officer with a Firearm is “half of the longest term of imprisonment for the offense so attempted,” or five years.
 

 Defendant cites two cases where the defendants were convicted of aggravated assault of a police officer and received lighter sentences than his. In
 
 State v. Brown,
 
 2009-0865 (La.App. 4 Cir. 12/2/09), 26 So.3d 845, the defendant received a three year sentence; in
 
 State v. Stephens,
 
 2009-0631 (La.App. 4 Cir. 11/24/09) 27 So.3d 987, the defendant received a five year sentence (the defendant | sin
 
 Stephens
 
 was also sentenced to ten years for being a felon in possession of a firearm). In
 
 Brown
 
 and
 
 Stephens,
 
 however, neither Defendant challenged his sentence on appeal; therefore, this Court did not review their sentences.
 

 This Court’s decision in
 
 State v. Wiltz,
 
 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, is more analogous to the instant case. In
 
 Wiltz,
 
 Defendant was convicted of aggravated assault on a police officer and received the maximum sentence, ten years.
 
 Wiltz,
 
 2008-1441 at p. 11-12, 28 So.3d at 561-62. In imposing the maximum sentence, the trial court noted the following: 1) Defendant had originally been charged with three counts of aggra
 
 *179
 
 vated assault upon a peace officer with a firearm; 2) Defendant had twice assaulted a pursuing officer, rather than give up being chased; and 3) the trial court believed that given the opportunity, Defendant would have fired at the pursuing officer.
 
 Id.
 

 Like the Defendant in
 
 Wiltz, supra,
 
 Defendant in this case was fleeing from the police, and had the opportunity to give himself up, but instead chose to assault the officer with a firearm and continue to evade the authorities in order to escape apprehension. Although Defendant initially complied when Officer Rivet ordered him to stop and show his hands, Defendant subsequently produced a gun and pointed it at the officer. When Officer Rivet drew his own gun and fired one shot, Defendant continued fleeing.
 
 [9]
 

 |flConsidering the foregoing, the record supports a conclusion that Defendant attempted an assault with a firearm on Officer Rivet, and therefore evidences an adequate factual basis for the sentence imposed.
 
 See Wiltz,
 
 2008-1441 at p. 11-12, 28 So.3d at 561-62,
 
 [10]
 

 see also
 
 La. C.Cr.P. art. 894.1(B)(18)(foreseeably endangered human life by attempted use or threatened use of force against a person shall be accorded weight in determination of suspension of sentence); La.C.Cr.P. art. 894.1(B)(10)(offender used a dangerous weapon shall be accorded weight in determination of suspension of sentence); and La.C.Cr.P. art. 894.1(B)(6)(threat or actual use of violence shall be accorded weight in determination of suspension of sentence).
 

 Furthermore, at trial, Defendant admitted his multiple convictions, including assault.
 
 See
 
 La.C.Cr.P. art. 894.1(B)(12)(offender’s involvement in similar offenses not already considered in criminal history shall be accorded weight in determination of suspension of sentence). Additionally, a trial court has vast discretion in sentencing within the statutory limits.
 
 State v. Gorby,
 
 2003-1666, p. 3 (La.App. 4 Cir. 2/11/04), 868 So.2d 193, 196
 
 (citing State v. Trahan,
 
 425 So.2d 1222 (La.1983)). Therefore, we find that Defendant failed to demonstrate that the trial court abused its discretion in sentencing him to five years for the Attempted Aggravated Assault on a Police Officer with a Firearm.
 

 Defendant further argues that his Aggravated Battery conviction involved a mitigating circumstance; he was attempting to protect Ronnie Jenkins, his younger brother, whose tooth had been knocked out in the fight with Deadric. With regard to factors taken into consideration by a reviewing court with respect to sentencing, 110this Court had held that “[i]n determining whether a sentence is dispro
 
 *180
 
 portionate to the offense, a reviewing court should consider the following factors: the nature of the offense and the offender, a comparison of the sentence with punishments imposed in other crimes, the legislative purpose behind the punishment, and a comparison of the punishment provided for this crime in other jurisdictions.”
 
 State v. Moss,
 
 2008-1079, p. 18 (La.App. 4 Cir. 7/22/09), 17 So.3d 441, 452
 
 (citing State v. Telsee,
 
 425 So.2d 1251, 1253-1254 (La.1983)). Accordingly, “the only relevant question on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing the defendant.”
 
 Moss,
 
 2008-1079, pp. 18-19, 17 So.3d at 452
 
 (citing State v. Cook,
 
 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959). In this case, a review of the record evidences the following sentencing factors: 1) deliberate cruelty to the victim; 2) actual violence in the commission of the offense; 3) use of a firearm; and 4) persistent involvement in a similar offense.
 

 Although the State relies upon
 
 State v. Edwards,
 
 2006-0643 (La.App. 5 Cir. 3/27/07), 957 So.2d 185, a case involving a Defendant who received a seven year sentence for backing his vehicle over an employee attempting to stop him from leaving an accident scene, we find that
 
 State v. Moossy,
 
 40,566 (La.App. 2 Cir. 3/10/06), 924 So.2d 485 is instructive. In
 
 Moossy,
 
 the Defendant hit the victim with a dog leash and struck the victim in the back of the neck with a tree limb. The Second Circuit affirmed the trial court’s five year sentence for aggravated battery.
 
 Id.,
 
 40,566 at p. 1, 924 So.2d at 486.
 

 In affirming the conviction, the Court noted that the Defendant Moossy, who had a simple battery conviction, was a first felony offender, and that the victim sought medical attention for her injuries.
 
 Id.,
 
 40,566 at p. 3, 924 So.2d at 487. |„The Second Circuit held that the defendant’s five year sentence for aggravated battery was “lenient and mid-range.”
 
 [11]
 

 Id.
 
 Likewise, we find that Defendant’s sentence of five years in this case is comparable, and that the trial court did not abuse its discretion in sentencing Defendant to five years for Aggravated Battery.
 

 Although Defendant argues that his sentences are excessive because they are to be served consecutively, La.C.Cr.P. art. 883 specifically provides that convictions and sentences which are not part of the same act or transaction shall be served consecutively:
 

 If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
 

 La.C.Cr.P. art. 883. Additionally, even for offenses that are based on the same act or transaction, it is within a trial court’s discretion to order sentences to run consecutively rather than concurrently pursuant to La.C.Cr.P. art. 883.
 
 State v. Parker,
 
 42,311, p. 17 (La.App. 2 Cir. 8/15/07), 963 So.2d 497, 509.
 

 
 *181
 
 In this case, Defendant was convicted of two different crimes against two different victims. First, Defendant attempted the aggravated assault upon Officer Rivet with a firearm after fleeing from the police. Later that day, after he made his escape, Defendant returned to Deadric and Sheila’s house and committed the aggravated battery on Deadric. This was plainly a separate crime from the first. Therefore, Defendant failed to establish that the trial court abused its discretion in |12ordering that he serve his sentences consecutively pursuant to La.C.Cr.P. art. 88B. This assignment of error lacks merit.
 

 CONCLUSION
 

 For the foregoing reasons, we find that Defendant has failed to show that the trial court abused its discretion in sentencing him. Accordingly, Defendant cannot demonstrate any prejudice from any failure by trial counsel to file a motion to reconsider sentence. Defendant’s convictions and sentences are hereby affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Ronnie Jenkins was arrested.
 

 [2]
 

 . Officer Rivet testified at trial that when a person is holding his waistband while running, it is an indication that the person is possibly armed:
 

 Q. Through the course of your training, Officer Rivet—
 

 A. Yes, sir.
 

 Q. —in your experience is that when a person's running, holding their waistband, it means they are possibly armed?
 

 A. Does it mean they are possibly armed?
 

 Q. Is it a possibility that they have a gun?
 

 A. It is a possibility that they have a gun.
 

 [3]
 

 . Officer Jones testified that he lost sight of Defendant, but heard a gunshot shortly thereafter.
 

 [4]
 

 . Paul Sonnier, a friend, was outside when Ronnie Jenkins and Sheila argued on the date of the incident. Mr. Sonnier testified that he observed Defendant run from the police, and also observed Defendant approach Deadric from behind and punch him. Anthony Jenkins’ testimony corroborated Mr. Sonnier's recollection of the events. Angela Jenkins, Sheila's mother, also testified. None of the three witnesses observed Defendant with a gun that day.
 

 [5]
 

 . Defendant’s criminal history includes convictions for unauthorized use of a motor vehicle, assault, and receiving stolen property.
 

 [6]
 

 . Detective Ryan Aucoin testified that he showed Officer Rivet a photographic lineup, at which time Officer Rivet identified Defendant from the lineup. Officer Jones testified that a warrant was issued for Defendant's arrest, and Defendant was subsequently arrested on September 7, 2008, after receiving a tip that Defendant was hiding at his girlfriend’s residence. Defendant was discovered hiding under a bed in the residence.
 

 [7]
 

 . La. R.S. 14:37.2 provides as follows:
 

 A. Aggravated assault upon a peace officer with a firearm is an assault committed upon a peace officer who is acting in the course and scope of his duties with a firearm.
 

 B. For purposes of this Section, ''firearm” is defined as an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.
 

 C. Whoever commits an aggravated assault upon a peace officer with a firearm shall be fined not more than five thousand dollars, or imprisoned for not less than one year nor more than ten years, with or without hard labor, or both.
 

 [8]
 

 . La. R.S. 14:27(D) provides as follows:
 

 * * * ⅜
 

 D. Whoever attempts to commit any crime shall be punished as follows:
 

 (l)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.
 

 (b) If the offense so attempted is punishable by death or life imprisonment and is attempted against an individual who is a peace officer engaged in the performance of his lawful duty, he shall be imprisoned at hard labor for not less than twenty nor more than fifty years without benefit of parole, probation, or suspension of sentence.
 

 (2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both. If the offense so attempted is theft, and is punishable as a felony, he shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both;
 

 (3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
 

 [9]
 

 . A review of the record reflects that the trial court did not articulate reasons for its sentence; however, this Court has determined that it is unnecessary for a trial court to list reasons for sentencing.
 
 State v. Jefferson,
 
 2004-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577. In Jefferson, this Court rejected the defendant's argument that it should vacate the mandatory minimum sentence imposed because the trial court failed to articulate reasons for sentencing, including any sentencing factors enumerated in La.C.Cr.P. art. 894.1.
 
 Jefferson,
 
 2004-1960, p. 37, 922 So.2d at 603. Noting that although the 894.1 sentencing factors must be considered in each case, this Court found that " ‘[wjhen the statute provides for a mandatory sentence, it is an exercise in futility for the trial court to enumerate its reasons for sentencing.’ "
 
 Id. (citing State v. Green,
 
 99-2847, p. 8 (La.App. 4 Cir. 11/29/00), 779 So.2d 835, 840;
 
 State v. Brooks,
 
 2000-2337, p. 3 (La.App. 4 Cir. 4/10/02), 817 So.2d 288, 290).
 

 [10]
 

 . The pursuing officer in
 
 Wiltz
 
 pointed his gun at the Defendant, but did not fire.
 
 Wiltz,
 
 2008-1441 at p. 11-12, 28 So.3d at 561-62.
 

 [11]
 

 . The Court also noted that no fine was imposed.
 
 Moossy,
 
 40,566 at p. 1, 924 So.2d at 486.